UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
)
HEATHER DONAHUE,                            ) Case No. _____
)
                              Plaintiff,    )
)
        -against-                           ) **COMPLAINT**
)
ADVANCED EQUITIES, INC.,                    )
)  **Trial by Jury Demanded**
                              Defendant.    )
)
-----------------------------------------------------------X

Plaintiff, Heather Donahue, by her attorneys, Matalon ♦ Shweky ♦ Elman PLLC, as her Complaint against defendant Advanced Equities, Inc., alleges as follows:

### Parties

1. Plaintiff Heather Donahue ("Donahue") resides in Dunstable, Massachusetts.

2. Defendant Advanced Equities, Inc. ("Advanced") is a broker-dealer headquartered in Chicago with offices in New York, New York, San Diego and Richmond, Virginia.

### Jurisdiction and Venue

3. Jurisdiction is conferred upon this Court under 28 U.S.C. §1332 by virtue of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of seventy five thousand dollars ($75,000.00), exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because a substantial part of the events giving rise to the claims set forth herein occurred in New York.

## Nature of the Claim

5. Donahue is a former employee of Advanced. This action arises from Advanced's horrendous treatment to which it subjected women in general, and Donahue in particular. From practically the first day of Donahue's employment, it became abundantly clear that, at Advanced, women are second class citizens to be treated as little more than sexual objects. As set forth in greater detail below, pornography was pervasive at Advanced, and women, including Donahue, were constantly subjected to demeaning comments and behavior. Donahue witnessed the male employees routinely and openly ogle the female employees and was herself subjected to comments of a sexual nature by the head of Advanced's New York office, Frank Mazzola. This type of activity was not only tolerated at Advanced, it was encouraged. Indeed, Advanced offered absolutely no anti-harassment training whatsoever to its employees.

6. At Advanced's New York office, moreover, no women were hired into positions of responsibility, nor were women offered the opportunity of advancement and promotion. This incontrovertible statistic proves the point: at Advanced's New York office, not one woman served as a broker, or in a management or supervisory capacity, and *all* served as sales assistants. Indeed, Donahue and one other female employee were the only female employees permitted to attend sales meetings. But even that was nothing more than window dressing; at those meetings, the women were routinely singled out for disparate, hostile treatment on the basis of their gender by the head of Advanced's New York office, Frank Mazzola.

7. On September 11, 2008, a particularly galling episode occurred: the head of Advanced's New York office, Frank Mazzola, screamed and cursed at all present at a sales meeting, and then told only the two women who were present – Ms. Donahue and Jenna Mullen — that if they "didn't like what [they] heard, [they] no longer needed to attend the meetings."

2

Only one week later, Advanced terminated Ms. Donahue's employment. As set forth below, Advanced's purported reason for terminating Donahue - - that she improperly forwarded certain Advanced emails - - was pretextual and her termination was wrongful.

## FACTS COMMON TO ALL COUNTS

### Background

8. Until her termination by Advanced in September 2008, Donahue had been a sales assistant in the securities industry for approximately fourteen years. For most of that time - - first at Commonwealth Associates, then at Spencer Trask and ultimately at Advanced - - Donahue served as the assistant to Eric Rubenstein.

9. In 1995 Donahue obtained Series 7 and Series 63 licenses.

10. In the Spring of 2007, Mr. Rubenstein resigned from Spencer Trask and accepted a position at Advanced as Senior Managing Director – Private Equity.

11. Mr. Rubenstein asked Donahue to join him at Advanced and to continue working there as his assistant. Donahue agreed and on or about March 26, 2007, commenced employment at Advanced.

### Advanced Subjected Donahue to a Hostile Work Environment

12. From the beginning of her employment at Advanced, it became very clear to Donahue that, at Advanced's New York office, women were treated as little more than sexual objects. And that treatment was perpetrated most by the very person who should have ensured that women were treated fairly and equally - - Frank Mazzola, the head of Advanced's New York office.

3

13. On multiple occasions at Advanced, Donahue saw pornographic videos openly displayed on Mr. Mazzola's computer screen. Ms. Donahue frequently observed the same type of pornography openly displayed, for all to see, on brokers' monitors. These brokers were all Mr. Mazzola's direct subordinates.

14. In addition to the pervasive pornography, the male employees of Advanced, including Mr. Mazzola, routinely and openly ogled Advanced's female employees and made comments about their anatomy. By way of example, Ms. Donahue observed, on multiple occasions, the male employees of Advanced ogling a female employee, Sofia Sema, and heard them make comments about Ms. Sema's breasts.

15. On multiple occasions, the harassment was directed at Donahue. In or around May 2007, at a work party held at the SkyBox at Tao restaurant in New York City, Mr. Mazzola repeatedly asked Donahue whether she was sleeping with her boss, Eric Rubenstein, and after Donahue told him that his question was extremely inappropriate, he went so far as to ask "you never fucked him?" Consistent with that type of conduct, in or around June 2008, Mr. Mazzola came into Mr. Rubenstein's office at a time when Donahue was sitting behind Mr. Rubenstein's desk working with Mr. Rubenstein, and said to Mr. Rubenstein, "Isn't this role reversal? I'm surprised you don't have Heather bent over the desk."

16. Mr. Mazzola's mistreatment and harassment of women at Advanced was well-known; yet Advanced never disciplined Mr. Mazzola, and upon information and belief never even warned him about his inappropriate behavior.

17. The mistreatment and harassment of Advanced's female employees by brokers was also well-known; yet upon information and belief, Advanced never disciplined any of the brokers or warned them about their inappropriate behavior.

18. During the entire length of Donahue's employment at Advanced, Advanced never offered any sexual harassment or discrimination training of any kind in its New York office.

19. Advanced did not have any human resources personnel in its New York office. And it was well-known to Advanced's employees that complaining to Advanced's purported human resources director (who worked in Chicago) would have been futile.

20. Ms. Donahue nonetheless complained to both Advanced's Chief Compliance Officer, Matthew Reynolds, and its former New York Compliance Officer, Richard Crockett - - among others - - about Mr. Mazzola's conduct. No remedial action was taken.

**Advanced Discriminated Against its Female Employees**

21. In addition to subjecting the female employees of its New York office to sexual harassment and a hostile work environment, Advanced discriminated against women on the basis of their gender.

22. Of the approximately 40 employees in Advanced's New York office all but seven were men, and every single woman employee served as a sales assistant. To be clear, not one woman at Advanced's New York office served in a managerial or professional capacity, and none had any supervisory responsibilities. Every broker and cold caller at Advanced's New York office was male.

23. Of the seven (female) sales assistants, three including Donahue held Series 7 licenses. Donahue and one of the other registered assistants, Jenna Mullen, were permitted to attend sales meetings.

24. At those meetings, Mr. Mazzola routinely yelled at and berated Advanced's employees - male and female alike. But Mr. Mazzola singled out the women for disparate, discriminatory treatment.

25. For example, in July 2007, Mr. Mazzola told Donahue that, because Jenna Mullen had complained about a broker's conduct to the Chicago home office, women could no longer come to sales meetings. Mr. Mazzola, however, did not bar any male employees from the sales meetings. Mr. Mazzola ultimately relented after Ms. Donahue complained to him.

26. At a sales meeting that Donahue attended on September 11, 2008, Mazzola screamed and cursed at all present, yelling at the sales staff to "sell the hell out of" a deal that was a package of two other deals. Upon information and belief, the venture banks whose deals were being packaged were not aware that Advanced was packaging them, and the packaging of the two deals may have violated SEC rules. Accordingly, Mr. Mazzola instructed the brokers to keep the deal "top secret."

27. After the meeting, Mr. Mazzola again singled out the two women present at the meeting (Donahue and Jenna Mullen) for disparate treatment, and demanded that they meet with him in the offices of Advanced's New York Compliance Officer, Basil Christakos. Mr. Mazzola told the two women in an intimidating fashion "that if [they] didn't like what they heard, [they] no longer needed to attend the meetings." Consistent with his erratic behavior, Mr. Mazzola ultimately apologized for cursing at the meeting.

**When Advanced Terminated Ms. Donahue, the Reason it Provided was Pretextual**

28. On September 12, 2008 - - which is to say, one day after Mr. Mazzola yet again singled Donahue out for disparate, hostile treatment - - Donahue forwarded to some former

6

colleagues a series of emails that Mr. Mazzola had sent to her and others. Donahue's intent in sending those emails was to demonstrate to those former colleagues the type of abuse and erratic behavior that she and her colleagues at Advanced were subjected to. In those emails, Mr. Mazzola wrote, among other things: [1]

> If you dirty shoe wearing, cheap sob's do not get shoe shines she will stop coming.

April 17, 2008 email.

\* \* \*

> The support I have been getting has been overwhelming (not). I will be sure to remember everyone who get's [sic] at least something done. I will certainly remember those who do butkus or better yet I will forget you exist. Your call on how you would like to be remembered or not.
>
> If you cannot raise at least $200K on one of these bridges you should consider a new career because sales are obviously not your forte. We need it today!

May 2, 2008 email.

\* \* \*

> Guys,
>
> You really need to step it up. As it looks now only a few will actually hit their goals for Friday. This totally unacceptable and will have ramifications. That is not huffing and puffing it is 100% fucking fact! You can take it to the bank!

June 11, 2008 email.

\* \* \*

> Folks,
>
> It is crunch time. Many of us have failed miserably in achieving our goals given to us last week to meet today. You would never know the level of failure based on the attitude in the office which is relatively light and fun, a typical summer Friday. Some I am surprised by others I expected.

---

[1] Copies of the referenced emails are annexed hereto collectively as Exhibit A.

> We/you have about four hours to pull a rabbit out of the hat. If you are here to make it happen you should be pounding the phones. If you are here to talk about weekend plans or the U.S. Open GET OUT – you are screwing it up for those of us that actually give a shit.
> Let's Bring it home in a big way today!

June 13, 2008 email.

\* \* \*

> I asked for updates on where you are on Fabrik and Magnum. I am to [sic] fucking busy to keep following up so when I ask for something just do it it is your job as well as mine to ask. I am fucking livid with anyone who has not yet sent me the updates. I am going to treat you with the same respect you treat me. In other words I will forget who you are. Send me the update now if you have not already for crying out loud.
>
> If it is zero so be it!

July 9, 2008 email.

\* \* \*

> Very simple rule going forward: If you are not clean shaven do not come to work. If you do come to work unshaven I will send you home no excuses. I do not want to hear that your face is sensitive or you were out all night or the chicks dig it. No BS I will send you home starting tomorrow.
>
> This has always been a requirement so if you do not like it go find a new job.

August 28, 2008 email.

29.     On September 15, 2008, after Mr. Mazzola discovered that Donahue had sent these emails, he called her into the office of the New York Compliance officer, Basil Christakos, and preceded to scream and curse at her.

30.     The next day, Mr. Christakos confirmed to Donahue that she would not be terminated as a result of sending out these emails. Nonetheless, on September 18th, Advanced terminated Ms. Donahue, claiming that she divulged confidential information.

31. Donahue did not divulge any confidential information, and her termination was pretextual.

## FIRST CLAIM: SEX DISCRIMINATION
## PURSUANT TO N.Y. STATE HUMAN RIGHTS LAW

32. Donahue repeats and realleges each and every allegation set forth above as if set forth at length herein.

33. Pursuant to the Human Rights Law of the State of New York ("HRL"), an employee may not be discriminated against on the basis of gender. Thus, women constitute a protected class under the HRL.

34. A hostile work environment claim under the HRL may arise when an employee is subjected to a "hostile work environment" which the employer knew or should have known existed but failed to remedy. Such a hostile work environment exists when the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Proving such a claim involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.

35. In this case, Advanced created a sexually discriminatory hostile work environment for Donahue by the acts and practices of the head of Advanced's New York office, Frank Mazzola including, but not limited to the following —

- openly displaying pornography and allowing subordinates to openly display pornography;

- openly ogling female employees and allowing subordinates to openly ogle female employees;

9

- making comments of a sexual nature about women in the office including Donahue and allowing subordinates to make the same type of comments; and

- singling out women including Donahue for disparate, hostile treatment.

36. Advanced's male brokers also created a sexually discriminatory hostile work environment for Donahue through their acts which included the open display of pornography; the ogling of female employees; and making comments of a sexual nature about Advanced's female employees.

37. In addition to subjecting Donahue to a hostile work environment, Advanced discriminated against Donahue on the basis of her gender. At Advanced, all women were relegated to assistant roles and there was no opportunity for advancement or promotion.

38. Because the head of Advanced's New York office personally created the hostile work environment Donahue was subjected to, Advanced knew of the hostile work environment but failed and refused to effect any remedy.

39. Pursuant to the New York Human Rights Law, Donahue is entitled to recover lost earnings and benefits in an amount to be determined according to the proof at trial but believed to be in excess of $150,000, as well as costs of suit, including reasonable attorneys' fees.

## SECOND CLAIM: SEX DISCRIMINATION
## PURSUANT TO THE NEW YORK CITY ADMINISTRATIVE CODE

40. Donahue repeats and realleges each and every allegation set forth above as if fully set forth herein.

41. Donahue is also entitled to recover pursuant to the Human Rights Law of the New York City Administrative Code, tit. 8, for discrimination on the basis of gender and hostile work environment. The same standards apply to such a claim as those for the HRL.

42. Pursuant to the New York City Administrative Code, Donahue is entitled to recover lost earnings and benefits in an amount to be determined according to the proof at trial but believed to be in excess of $150,000, as well as costs of suit, including reasonable attorneys' fees.

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

(i) On the First Claim, an award of lost earnings and benefits in an amount to be determined according to the proof at trial but believed to be in excess of $150,000, as well as costs of suit, including reasonable attorneys' fees;

(ii) On the Second Claim, an award of lost earnings and benefits in an amount to be determined according to the proof at trial but believed to be in excess of $150,000, as well as costs of suit, including reasonable attorneys' fees; and

(iii) granting such other and further relief as the Panel may deem just and proper.

Dated: New York, New York
December 22, 2009

MATALON ♦ SHWEKY ♦ ELMAN PLLC

By: _____
Howard I. Elman
450 Seventh Avenue, Suite 1409
New York, New York 10123
(212) 244-9000
*Attorneys for Claimant*